14 F.(2d)—34

# CARROLL v. CENTRAL R. CO. OF NEW JERSEY.

(District Court, E. D. New York. April 19, 1926.)

No. 7284.

1. **Ferries** ⊜=32—**Child, injured while a passenger on respondent's ferryboat, through negligence of an employee, held entitled to recover.**

Libelant, a child six years old, *held* entitled to recover for an injury sustained on respondent's ferryboat and who was standing with her mother where passengers had a right to be when injured through the negligence of an employee in swinging open the gates.

2. **Courts** ⊜=375.

A court of admiralty is not bound by a state statute of limitations, unless laches be shown.

In Admiralty. Suit by Helen Carroll, an infant, by William J. Carroll, her guardian ad litem, against the Central Railroad Company of New Jersey. Decree for libelant.

Walter L. Rathbone, of New York City, for libelant.

Charles E. Miller, of New York City, for respondent.

CAMPBELL, District Judge. [1] The libelant, an infant about six years of age, on the 22d day of April, 1922, in company with her father and mother as passengers, boarded the respondent's ferryboat Wilkes-Barre at Communipau, bound for Liberty street, New York City. The libelant and her mother went on the ladies' side of the boat, and the father went on the men's side of the boat. When the vessel neared her landing place, the libelant was standing about 2 feet inside of the gate with her mother, who had libelant by the right hand. The gate was an accordian structure of a kind common on ferryboats, which fold together when closed, and have large openings between the bars composing the gate, and which run at angles, when open.

As the boat was being made fast to the bridge, on the New York side, the space to allow exit for passengers was opened by the gate being brought together, which gate, when so brought together, is customarily swung around, so that it runs lengthwise with the boat fore and aft, instead of athwartship when it is in place as a gate. On the day in question the regular deckhand was not present to open this gate, but an employee of the respondent, who customarily handled baggage and was not familiar with the operation of the gates, opened the gate.

The custom was to have two men on the gates, which each extended half the width of

the boat, one extending from one side to the center, the other from the other side to the center, each man opening one-half; but on the trip in question the baggageman opened both halves of the gate in succession, and in so doing did not use the usual care and observe the position of the passengers, but in opening the gate in front of the libelant and her mother he negligently swung the gate, after calling "Hands off," in such a way that it came in toward the libelant and her mother, and the libelant, fearing injury to her face, instinctively put up her left hand to protect her face, whereupon the end of her left thumb was caught in the gate in such a way that it became necessary to open the gate to allow libelant to remove her thumb. The opening of the gate was accomplished by the regular deckhand.

The libelant had a traumatic fracture of the end of her left thumb and loss of a small portion of the bone. The libelant suffered severe pain and suffering. Immediately after receiving the injury she was taken to the Broad Street Hospital, where she was treated, and returned for further treatment 16 or 18 times.

There was a sharp conflict in the medical testimony as to whether there will be a permanent deformity of the end of libelant's left thumb, and as to whether she has suffered loss of sensation in the end of her said thumb. The thumb is but slightly shortened, and there is no impairment of the joint. Neither physician claimed that he was an expert on the subject of scar tissue.

There is a scar going quite a distance around the thumb, which results in the end of the thumb, for about one quarter of an inch from the end, being constricted, causing a deformity which is quite noticeable when attention is directed to the thumb. That there will always be a deformity seems to be reasonably certain, as a deformity still existed at the time of the trial, after the lapse of nearly four years. But I also accept as reasonably certain that the constricted end of the thumb will to a large extent fill out, due to the fact of the youth of the libelant, and that a child recovers better than an adult, and improves with age. Such loss of sensation as there may be is not great and is in the scarred area. That the libelant will be deprived of the opportunity of following any calling or profession, due to the condition of the thumb, has not been shown to my satisfaction; but, of course, she will be handicapped by the deformity of her thumb in any instance where the thumb must be brought to the notice of others.

The contention of the respondent that there was any contributory negligence, which could be imputed to the libelant, because her father was on the other side of the boat and not holding her hand, which was injured, seems to me to be entirely without support in law. Libelant was where she had a perfect right to be, and was under the care of her mother, who was exercising due care and doing all that could legally be required.

[2] The statute of limitations of the state of New Jersey is not a defense, first, because this court, sitting in admiralty, is not bound by a state statute, unless laches be shown, although a state statute might and undoubtedly would be considered; and, secondly, because the injury was received in the state of New York, and not the state of New Jersey, and, if any state statute applied, it would be that of the state of New York, and the action was commenced within the time limited by that statute. The libelant was without fault, and the respondent was solely to blame.

A decree may be entered in favor of the libelant for $750 and costs.